## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOAN DANIEL,              )
                                )
         Plaintiff,        )
                                )      No. 15-cv-11660
      v.                 )
                                )      Judge Andrea R. Wood
ADVOCATE HEALTH CARE NETWORK,  )
                                )
         Defendant.     )

## <u>MEMORANDUM OPINION</u>

Plaintiff Joan Daniel worked as a compliance officer at Defendant Advocate Health Care Network ("Advocate"), where she contends that she was subjected to various acts of race discrimination culminating in her termination. Daniel has sued Advocate under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended in 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"). She also brings unlawful retaliation claims under Title VII, 42 U.S.C. § 2000e-3a; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3); and the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/15. Finally, Daniel alleges that, upon her termination, Advocate failed to provide her with proper notice of her health insurance coverage options in violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1166(a). Advocate has filed a motion to dismiss all of Daniel's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 33.) For the following reasons, Advocate's motion is granted in part and denied it in part.

## BACKGROUND

Daniel, a black woman, was employed at Advocate from 2008 until September 30, 2016. (Second Amend. Compl. ¶¶ 1, 10, Dkt. No. 38.)[1] Her complaint in this case sets out a series of allegedly discriminatory acts against her in the workplace, beginning in approximately 2012.

Daniel was hired as a Site Compliance Officer. (*Id.* ¶ 9.) In May 2012, Daniel and another black woman employee organized and made presentations for National Corporate Compliance and Ethics Week. (*Id.* ¶ 23(B).) White employees were not required to participate in the event, and neither Daniel nor her black coworker received any recognition for their participation. (*Id.*) Yet the following year, when white employees organized and made presentations for National Corporate Compliance and Ethics Week, Teske encouraged employees to attend and he gave flowers to the presenters. (*Id.*)

On May 30, 2012, in a meeting attended by eleven people, a white subordinate employee yelled at Daniel and another black woman employee, and interrupted Daniel's presentation. (*Id.* ¶ 23(E).) Teske did not stop or discipline the white subordinate employee. (*Id.*) Also during 2012, Jeffrey Teske, who was Vice President and Chief Compliance Officer, produced a quarterly business conduct report. (*Id.* ¶ 23(C).) The report included activities and completed projects of white employees, but did not include Daniel's activities and completed projects. (*Id.*) This occurred in November 2015 as well. (*Id.* ¶ 35(C).)

In June 2013, Daniel was made a Senior Compliance Officer. (*Id.* ¶ 23(A).) Upon her promotion, Teske made Daniel take a three-day leadership class that she had already taken in 2008 when she was initially hired. (*Id.*) When a white employee failed to attend the same leadership class, the white employee was not disciplined. (*Id.*) Also, Daniel was not given a

---

[1] For the purposes of Advocate's motion to dismiss, the Court accepts the allegations in Daniel's Second Amended Complaint as true and draws all reasonable inferences in her favor. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

promotion-level salary jump along with her change in job title to Senior Compliance Officer—her salary was increased by 3.6%, rather than the customary 5%–20%. (*Id.* ¶ 23(F).) In December 2011, Advocate gave a white employee a promotion, along with the promotion-level salary jump. (*Id.*) The white employee had only been employed at Advocate for a year, had a smaller workload than Daniel, and had performance ratings that were equal or worse than Daniel's performance ratings. (*Id.*)

On September 24, 2013, Teske gave Daniel her first negative performance review. (*Id.* ¶ 23(D).) Just three weeks earlier, Teske had discussed Daniel's performance with her, telling her that "everything is the same; no changes from last year." (*Id.*) And prior to this time, Daniel had received five positive performance reviews. (*Id.*) Teske did not give negative performance reviews to any white employees who had a similar or greater number of successive positive performance reviews. (*Id.*)

Subsequently, on or around November 26, 2013, Daniel filed a complaint with United States Department of Labor Office of Federal Contract Compliance Programs ("OFCCP"), alleging race and sex discrimination. (*Id.* ¶ 8(A).) On September 30, 2015, Daniel was issued a right-to-sue letter by the OFCCP, which informed Daniel that she could sue her employer under Title VII. (Ex. A to Second Amend. Compl. at 1 of 5, Dkt. No. 38-1.)

Following her complaint, Teske stepped up his campaign of allegedly discriminatory conduct against Daniel. For example, in January 2014, Teske rewarded a white employee for adding more to her compliance workload. But Teske never rewarded Daniel, even though she had a higher workload than the white employee. (Second Amend. Compl. ¶ 35(F), Dkt. No. 38.) Around that time, Teske promoted a white extern after the extern passed a bar exam, but he did not promote Daniel after she received her Master's Degree in Health Informatics. (*Id.* ¶ 35(G).)

And a few months later, in July 2014, Advocate rewarded an employee of Middle Eastern origin for receiving her Certification in Healthcare Compliance even though the company had not rewarded Daniel for receiving her own Certification in Healthcare Compliance in 2011. (*Id.* ¶ 35(E).)

In May 2015, Teske indicated to Daniel that he had received negative feedback regarding her customer service—a criticism that was contradicted by the actual customer service survey reports. (*Id.* ¶ 35(D).) Teske protected white employees from negative customer feedback. (*Id.*) In July 2015, Teske condoned Daniel's exclusion from a conference call. (*Id.* ¶ 35(A).) In November 2015, Teske assisted a white employee with an uncomplicated compliance matter in which that employee did not need help; however, Teske did not extend the same assistance to Daniel when she was working on a more complicated matter. (*Id.*)

In June 2015, Daniel reported Advocate's federal compliance violations, including race discrimination, to the OFCCP. (*Id.* ¶ 58.) Four months later, in October 2015, Teske gave Daniel a Memorandum of Concern, which was a step toward terminating her employment. (*Id.* ¶ 35(H).) Daniel complained to the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA"). (*Id.* ¶ 58.) And on January 21, 2016, she filed a second complaint with the OFCCP alleging race discrimination related to Teske's Memorandum of Concern. (Ex. B to Second Amend. Compl. at 6 of 11, Dkt. No. 38-2.) On February 25, 2016, Daniel was issued a right-to-sue letter by the OFCCP, which informed her that she could sue her employer under Title VII. (Ex. B to Second Amend. Compl. at 2 of 11, Dkt. No. 38-2.)

Finally, in September 2016, Daniel was terminated from employment. (*Id.* ¶ 35(J).) Upon her termination, Advocate informed Daniel that she could obtain continued health coverage, but that her dependent daughter could not be covered. (*Id.* ¶ 70.)

4

**DISCUSSION**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, the short plain statement must overcome two hurdles. First, the complaint's factual allegations must be enough to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id.* This pleading standard does not necessarily require a complaint to contain "detailed factual allegations." *Id.* (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As mentioned above, in his Second Amended Complaint, Daniel brings claims against Advocate for unlawful race discrimination in employment under Title VII (Count I) and Section 1981 (Count III), for unlawful retaliation under Title VII, the FLSA, and the IWA (Counts II and IV), and for failing to provide proper notice of her health insurance coverage options upon her termination in violation of the COBRA (Count V). The Court considers the adequacy of each of these claims in turn.

## I.      Title VII and Section 1981 Race Discrimination Claims (Counts I and III)

Advocate argues that Daniel's claim under Title VII should be dismissed because: (1) Daniel did not properly file a charge with the Equal Employment Opportunity Commission ("EEOC") prior to bringing suit, (2) Daniel's allegations are not reasonably related to the two

charges that she submitted to the OFCCP, (3) Daniel's allegations were not raised in a timely manner, and (4) Daniel's allegations do not constitute violations under Title VII.

A.     *Filing of Charge with OFCCP*

Daniel filed two charges with the OFCCP—one on November 26, 2013 and the other on January 21, 2016. For each of the charges, Daniel was issued a right-to-sue letter, both of which informed her that she was entitled to sue Advocate under Title VII. (Second Amend. Compl. ¶ 8(A), Dkt. No. 38; Ex. A to Second Amend. Compl. at 1 of 5, Dkt. No. 38-1; Ex. B to Second Amend. Compl. at 2 of 11, Dkt. No. 38-2.)

Advocate argues that Daniel's November 26, 2013 charge was not made under Title VII but rather invoked law pertaining to federal government contracts, and thus that charge cannot support Daniel's Title VII claims before this Court.[2] The Court observes that the record currently before it does not include Daniel's November 26, 2013 OFCCP charge. Daniel, however, does allege that she complained about race discrimination in her OFCCP charge. (*See* Second Amend. Compl. ¶ 8(A), Dkt. No. 38). And Advocate has cited no authority requiring Daniel explicitly to reference Title VII in her charge. Indeed, a Title VII plaintiff is not required to plead specific elements of a legal theory in his or her charge. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111 (7th Cir. 1992). Thus, at this juncture, the Court determines that Daniel's November 26, 2013 OFCCP charge sufficiently stated her race discrimination claim under Title VII.

Advocate next contends that, with respect to both Daniel's November 26, 2013 OFCCP charge and her January 21, 2016 OFCCP charge, Daniel was required to file her charges with the EEOC before bringing her Title VII claim to court. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004) ("Under Title VII, a plaintiff is required to exhaust her administrative remedies by filing a complaint with the appropriate federal or state agency.").

---

[2] Advocate does not raise this argument regarding Daniel's January 21, 2016 OFCCP charge.

Because Daniel only filed with the OFCCP, and not the EEOC or a state analogue, Advocate argues that Daniel's claims must be dismissed. But according to the EEOC's November 16, 2011 Memorandum of Understanding, which memorializes coordination efforts between the EEOC and the OFCCP:

> OFCCP shall act as [the] EEOC's agent for the purposes of receiving the Title VII component of all complaints/charges. All complaints/charges of employment discrimination filed with OFCCP alleging a Title VII basis (race, color, religion, sex, national origin, or retaliation) shall be received as complaints/charges simultaneously dual-filed under Title VII.

76 FR 71029-02. Thus, when Daniel filed her charges with the OFCCP, she properly filed charges with an agent of the EEOC.[3] Advocate's argument to the contrary fails.

### B. *Reasonable Relation of Title VII Claim to OFCCP Charge*

Advocate next argues that many of Daniel's allegations of race discrimination in the Second Amended Complaint were not in her November 26, 2013 charge to the OFCCP and thus Daniel cannot bring suit on those allegations. *See McKenzie v. Ill. Dep't. of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996) (""[A] Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations."). As discussed, Daniel's November 26, 2013 OFCCP charge is not included in the record before the Court. The record only states that Daniel alleges in her November 26, 2013 OFCCP charge she complained of, *inter alia*, "race (Black of African

---

[3] Advocate also argues that the November 16, 2011 Memorandum of Understanding is legally invalid because it violates Title VII's confined statutory grant of powers to the EEOC by allowing the EEOC to designate who investigates Title VII claims. This argument is inapposite. The only relevant feature of the Memorandum of Understanding is whether the EEOC could designate OFCCP as an agent to **receive** Daniel's Title VII charges. Advocate has not pointed to anything in Title VII that prohibits the EEOC from doing so. As for Advocate's arguments about who investigated Daniel's charges, nothing about the OFCCP's and EEOC's investigations is in the record. Moreover, it is unclear why, if it were the case that the EEOC or OFCCP did not fulfill their statutory obligations, Daniel should suffer dismissal of her claim as a result. Advocate has not provided any authority dictating such an outcome.

American) and sex (female) discrimination." At this juncture, the Court cannot assess whether the allegations giving rise to Daniel's Title VII claim are properly encompassed by her November 26, 2013 OFCCP charge and thus will not dismiss Daniel's Title VII claim on that basis. After further development of the evidentiary record, Advocate may revisit this issue in connection with a properly supported summary judgment motion.

      C.    *Timeliness of Allegations*

Advocate further contends that a number of Daniel's allegations are untimely; thus, insofar as Daniel's Title VII claim is based on those allegations, it must be dismissed. A Title VII plaintiff must file a charge of discrimination with the federal EEOC within 180 days of the alleged violation before filing suit in federal court.[4] 42 U.S.C. §§ 12117(a), 2000e-5(e). According to Daniel, there are the following putative discriminatory events:

(1) failing to recognize Daniel's work in 2012, but recognizing similar work of others in 2013,

(2) failing to discipline an employee who interrupted and degraded Daniel,

(3) failing to promote Daniel and increase here salary appropriately in June 2013,

(4) requiring Daniel attend a three-day workshop in June 2013, and

(5) giving Daniel a negative review in September 2013.

(Pl.'s Resp. at 12–13, Dkt. No. 39.)[5]

---

[4] Under certain circumstances, this limitations period is extended to 300 days. Because the events that Advocate challenges are more than 300 days from the filing of Daniel's November 26, 2013 OFCCP charge, whether the statutory requirement for her claim was 180 days or 300 days makes no difference for this ruling.

[5] Though the Second Amended Complaint sets forth other putative incidents of race discrimination, Daniel does not make any argument about their timeliness in responding to Advocate's motion. Daniel also complains that she was retaliated against when Teske issued the Memorandum of Concern in October 2015, and that she was ultimately terminated in September 2016 in relation for filing her OFCCP charges and reporting violations to OFCCP and OSHA. Advocate does not contest that Daniel's January 21, 2016 OFCCP charge properly encompasses the putative retaliation relating to the Memorandum of Concern.

Advocate does not challenge that events (3), (4), and (5) are properly within the time period of Daniel's November 26, 2013 charge. Regarding events (1) and (2), Daniel argues that, although they fall outside the 180-day window, they are chargeable under the "continuing violation" theory. Under the applicable version of this theory, a continuing violation occurs when "the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy . . . . In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts. This brand of continuing violation has also been referred to as a serial violation, and as a pattern of ongoing discrimination." *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir. 1992) (internal quotations and citations omitted). At the motion to dismiss stage, Daniel has done enough to allege that all of the events were related and thus constituted a continuing violation. That is, the allegations set forth a theory that Teske and Advocate engaged in an escalating pattern of race discrimination, and while earlier incidents may not have alone given Daniel notice of the occurring race discrimination, those incidents were related to the later-occurring, more serious incidents. As such, all of these events may be considered in assessing Daniel's Title VII race discrimination claim.

D.      *Actionable under Title VII*

To state a Title VII employment discrimination claim, Daniel must set out factual allegations sufficient to show: (1) she is a member of a protected class, (2) she was subjected to an adverse employment act, and (3) there is a link between those two. *Martino v. W. & S. Fin. Grp.*,

---

Furthermore, Daniel may pursue her retaliation claim based on her ultimate termination in September 2016 under her OFCCP charges, even though she did not file a separate charge for her termination. *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir.2013) ("[F]or practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc. . . . a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation.").

715 F.3d 195, 201–02 (7th Cir. 2013). As the Seventh Circuit has explained, "[a] materially adverse employment action is something 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007). Specifically, the Seventh Circuit has articulated "three general categories of actionable, materially adverse employment actions: '(1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.'" *Id.* at 780 (quoting *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004)).

Advocate argues that events (1), (2), (4), and (5) listed in the prior section are not actionable under Title VII as they do not constitute adverse employment acts.[6] These events—namely, failing to recognize Daniel's work in an interoffice report, failing to discipline an employee who interrupted and degraded Daniel, requiring Daniel to attend a three-day leadership workshop she had already attended, and giving Daniel a negative performance review—are plausibly actionable as falling into the Seventh Circuit's third category of adverse employment actions, for they could have been significantly humiliating and degrading in Daniel's workplace

---

[6] Advocate did not argue that event (3) does not constitute an adverse employment action; nor could it, as it is well-established that a failure to promote may be considered an adverse employment action for purposes of a Title VII claim. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 558 (7th Cir. 2014) (citing *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 743–44 (7th Cir. 2002)).

and detrimental to her career. *See Nichols*, 510 F.3d at 780 (including as materially adverse employment actions situations where the conditions in which an employee works "are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment"). At this stage of the proceedings, the factual record is not sufficiently detailed to determine what effects these actions may have had on Daniel workplace environment at Advocate. The parties may pursue these arguments through discovery and raise them at summary judgment.

Advocate also argues that event (3) is not properly pleaded because Daniel does not set forth facts that plausibly suggest there is a link between her race and Advocate failing to promote her and compensate her accordingly. This is incorrect, however. Daniel alleges that there was a similarly-situated white employee who was promoted and given a salary increase. (Second Amend. Compl. ¶ 23(F), Dkt. No. 38.) Thus, Daniel has properly pleaded facts that suggest a link between her alleged adverse employment action and her race, and so Daniel's Title VII claim will proceed.

>    E.    *Section 1981 Claim*

Like Title VII, Section 1981 also allows an employee to seek compensation for workplace discrimination on the basis of race. *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 748 (7th Cir. 1985). The legal analysis of whether allegations of racial discrimination in the workplace are actionable is identical under Title VII and § 1981. *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015). Thus, as the Court has allowed Daniel's Title VII race discrimination claims to proceed, Daniel's Section 1981 claim for race discrimination in employment will also proceed.

## II.       Retaliation under Title VII (in Count II)

Section 2000e-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . .because he has opposed any practice made an unlawful employment practice by this subchapter [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [Title VII].

42 U.S.C. § 2000e-3(a). Advocate argues that Daniel's Title VII retaliation claim fails because she does not identify any protected activity that allegedly led to the adverse employment actions. But Daniel claims that Teske issued the Memorandum of Concern because of her 2013 OFCCP charge reporting race discrimination. (Second Amend. Compl. ¶ 8(A), Dkt. No. 38; Ex. B to Second Amend. Compl. at 6 of 11, Dkt. No. 38-2.) She also alleges that she was ultimately terminated because of her complaints to OFCCP and OSHA, which included complaints about race discrimination. (Second Amend. Compl. ¶ 59, Dkt. No. 38 (discussing claim under IWA).) Race discrimination in employment is prohibited by Title VII and Daniel's complaints alleging that Advocate was engaging in race discrimination is an activity protected by Section 2000-3(a). Thus, Daniel has identified a protective activity for purposes of her Title VII retaliation claim.

Advocate also contends that many of Daniel's allegations of Title VII retaliation are beyond the scope of her January 21, 2016 OFCCP charge. Unlike Daniel's November 23, 2016 OFCCP charge, Daniel's January 21, 2016 OFCCP charge alleging Title VII retaliation is part of the record. (Ex. B to Second Amend. Compl. at 6 of 11, Dkt. No. 38-2.) That January 21, 2016 OFCCP charge only complains about the Memorandum of Concern that Teske gave to Daniel in October 2015. Thus, Daniel may only seek compensation for those incidents in Paragraph 35 of the Second Amended Complaint that relate to the Memorandum of Concern or her ultimate termination. *See Luevano*, 722 F.3d 1014, 1030 (7th Cir. 2013) ("[A] plaintiff who alleges

retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation.").

However, the Court considers it premature to determine which of the incidents relate to the Memorandum of Concern or her termination—that is a more appropriate question for the summary judgment stage as well, since that question involves factual determinations that should be made on a more fulsome record. Moreover, even if the other incidents do not directly relate to the Memorandum of Concern or her termination, Daniel may still use these other incidents as evidence in support of her claim Title VII retaliation claim. Thus, Daniel's claim for wrongful retaliation in violation of Section 2000e-3(a) will proceed, but limited to Teske's issuance of the Memorandum of Concern and Daniel's ultimate termination.

## III.    Retaliation for FLSA Violations (in Count II)

Daniel's claim for improper retaliation under the FLSA, 29 U.S.C. § 215(a)(3), must be dismissed. Section 215(a)(3) prohibits an employer from "discharge[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). But Daniel has not alleged at all that she reported any violation of the FLSA and she has stated no facts indicating an FLSA violation. Daniel alleges that in her November 26, 2013 OFCCP charge she complained that she was entitled to back pay, but there is no indication that she was due back pay for a violation of the FLSA, as opposed to Title VII.

## IV.    Illinois Whistleblower Act Claim (Count IV)

Section 15(b) of the IWA provides:

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

740 ILCS 174/15. As discussed above, Daniel claims that she was terminated, at least in part, because she reported violations of federal law, including race discrimination, to the OFCCP and OSHA. (Second Amend. Compl. ¶ 59, Dkt. No. 38.) Nonetheless, Advocate argues that Daniel's claim must be dismissed because she does not indicate what statute or regulation Advocate allegedly violated, she does not identify what public policy interest was implicated by the purported violations, and she does not allege how it would be reasonable to think that Advocate violated the law. These arguments are unpersuasive. Daniel explicitly alleges that she reported Advocate for race discrimination, among other things. That very clearly implicates important public policy. Although the record before the Court does not reveal exactly what Daniel reported to the federal agencies, as Daniel has alleged acts of racial discrimination that have survived a motion to dismiss, it is plausible based on the record that is available that Daniel could have reasonably believed that the information she disclosed to the federal agencies constituted race discrimination in violation of the law. Thus, Daniel's claim under the IWA shall proceed.

## V.      Violations of COBRA Notice Provisions (Count V)

Daniel's claim that Advocate violated her rights under COBRA, 29 U.S.C. § 1166(a), by failing to provide her with proper notice of her continuing healthcare coverage options also fails. Nothing in the cited statutory section obligates the employer to inform the employee of anything. Section 1166(a)(2) requires the employer to notify the administrator of the healthcare plan of certain qualifying events, like the termination of an employee. But Daniel does not allege that Advocate failed to make any requisite notifications to the plan administrator. Moreover, insofar as Daniel seeks to bring a claim for a misrepresentation about her continuing healthcare coverage, nothing in 29 U.S.C. § 1166(a) creates a civil remedy available to Daniel for such a misrepresentation.

**CONCLUSION**

For the foregoing reasons, Advocate's motion to dismiss (Dkt. No. 33) is granted in part and denied in part. Specifically, the Court grants the motion with respect to Daniel's claim for unlawful retaliation under the FLSA (in Count II) and for failing to provide proper notice under COBRA (Count V). The Court denies the motion with respect to Daniel's claim for unlawful race discrimination under Title VII (Count I) and Section 1981 (Count III), and for unlawful retaliation under Title VII (in Count II) and the IWA (Count IV).

ENTERED:

Dated: September 30, 2017

_____
Andrea R. Wood
United States District Judge